[No. 3,001.]

# E. HICKS AND PETER FULKERSON v. R. J. MURRAY, H. W. BRIGGS, J. M. BROWNE, A. LEWIS, AND MRS. AUZELIA LEWIS.

MECHANICS' LIEN LAW—CONSTITUTIONAL OBJECTIONS CONSIDERED.—
The mechanics' lien law of 1868 is not open to the objection that it is
unconstitutional on the ground that it attempts to appoint agents for private
persons, nor that it confiscates property, nor as to the notice required of
owners as to responsibility for improvements, nor that it attempts to take
away vested rights or to clothe private persons with power to divest citizens
of their property.

MECHANICS' LIEN.—If the person who claims a mechanics' lien under the
Act of 1868, signs the verification attached to the claim, this is a sufficient
signing of the claim within the intent of the Act.

SAME—NAME OF OWNER TO BE STATED.—Under the mechanics' lien law
of 1868, it is material that the claim for the benefit of the lien shall state
the name of the owner or reputed owner of the premises.

SAME—PLEADING—ALLEGATION AS TO OWNERSHIP.—An allegation in
the complaint, that in his claim filed under the mechanics' lien law, the
plaintiff described the premises as those purchased and occupied by M., is
not a sufficient averment of the ownership of M., because it is not an aver-
ment in the complaint that M. owned the property, but an averment that
the plaintiff has stated in his claim that M. owned the property, and does
not aver who owned the premises at the commencement of the action.

ESSENTIAL FACTS TO BE ALLEGED.—Unless the facts essential to the sup-
port of the case be alleged in the pleadings, evidence upon such omitted
facts cannot be heard or considered.

IDEM.—Evidence of facts, or stipulations as to the facts of a case, cannot
make a case broader than it appears by the allegations of the pleadings,
nor do they entitle a party to any relief beyond what the averments entitle
him to.

APPEAL from the District Court of the Third Judicial Dis-
trict, Santa Clara County.

This was an action to enforce a mechanics' lien upon prem-
ises of which defendant Murray was in possession under a
contract of purchase made with defendants A. Lewis and
Auzelia Lewis, his wife. The defendants Lewis held a
mortgage upon the premises, dated February 10th, 1870,

and had given a quitclaim conveyance of the same date to Murray.

The defendant Browne, in his answer, set up, by way of cross-complaint, a claim against defendant Murray, and asked to have a lien in his own favor, filed April 30th, 1870, enforced. He averred that in his claim he had described the premises as follows: "The two-story frame or wooden dwelling house or building, divided into eleven rooms, with eighteen doors and eighteen windows, erected upon the lots or lands heretofore named, and here more particularly described as the land purchased by said R. J. Murray of Mrs. A. Lewis, and situated at the junction of Lewis and Railroad streets, in the said Town of Gilroy, and on the east side of said Railroad street, and running sixty-four feet along the same, one hundred and forty feet along the south side of said Lewis street; said building and premises being the same now occupied by the said Murray and his family;" and that the premises are the same as described in the plaintiffs' complaint.

Judgment was rendered for the plaintiffs and for the defendants Browne, Briggs, A. Lewis, and Auzelia Lewis— the liens under the mechanics' lien law to have precedence to the mortgage lien of the defendants Lewis. The defendants Lewis appealed.

The other facts are stated in the opinion.

*Moore, Laine & Leib,* for Appellants.

1. The statute upon which the liens in this case are based is unconstitutional. The first section of the Act in question provides that a party shall be charged for work done and materials furnished to himself or agent, and that the one having the work in charge shall be held to be the agent of the owner. We submit that it is not in the power of the Legislature to say that any one shall be held to be the agent of another without contract or agreement. The matter of

appointing agents is not left to the Legislature. The law-making power may define who may be agents, or who may be authorized to select an agent, and the mode of selection or appointment, viz: it may prescribe rules or laws in that behalf, but it cannot do the appointing itself. In this case, neither Lewis nor Mrs. Lewis authorized or directed any one to construct this house upon the premises mortgaged to them, and these parties, in reason and justice, could not lessen the value of their security by placing such building there. Yet under this law, appointing and creating an agent for Lewis and wife, their security is lessened, viz: the decree not only operates upon the house, materials, etc., but authorizes and directs a sale of the land itself, and this upon the theory of the agency created by the statute. We submit that the Legislature usurped this power, and the statute is void.

The third section of the Act amounts to a confiscation of property, and that without crime or a hearing. It provides that if A. has a valid mortgage lien on "Black Acre," upon which stands a house worth five hundred dollars, that "B.," the owner of the land, may direct improvements to be made upon the house to the extent of one thousand dollars, and that the party expending this one thousand dollars in repairs shall be preferred in his lien to the mortgage lien of "A.;" in other words, that "A.," without his approbation, knowledge, or consent, can be improved out of his lien. The five hundred dollar house was all there was of any value in the premises to secure "A.'s" mortgage; yet, by this unauthorized repair of one thousand dollars, the whole thing can be sold for the payment of the one thousand dollar improvement, it becomes a preferred claim, and "A." has nothing left but the naked and valueless land; the house as improved is moved off to satisfy the new lien. This, we contend, is beyond legislative power.

The fourth section is, if possible, worse than the ones we

have already noticed. By that section a party must, within three days after it comes to his knowledge that some one is improving him out of his property or security, give notice that he will not be responsible, by posting a written notice on the land or on the improvement, and if he does not so do, he is held to have authorized the improvement, etc., and be bound by the lien. This section is unbending, and makes no provision for a party having such a matter at a place and time so as to render it impossible that he could give such notice in three days. Suppose a man owns and has a mortgage lien on property at some point in the extreme northern portion of the State, and when he is absent at San Diego he hears that some one is improving him· out of it, he cannot, by any possibility, give the notice in the three days, and must lose his property. Certainly this cannot be upheld; the time is unreasonably short. (See Cooley's Constitutional Limitations, p. 366, Note 3, where a kindred matter is considered.) If this falls, the whole statute must fall, under the authority of *Lathrop* v. *Mills*, 19 Cal. 530.

Again, a mortgage lien having vested prior to the improvement of a building or the like on the mortgaged premises, it is not in the power of the Legislature to compel the mortgagee to commence proceedings, either by notice or suit, before he is required by law to foreclose his lien. He has a vested interest, which the Legislature cannot thus divest. (Cooley, supra, p. 366.) This lien law undertakes to give material men, mechanics, and artisans, the power of public officers to divest citizens of their property and securities without their knowledge or consent. This, we submit, is beyond the power of the Legislature. (Cooley, supra, p. 563, and Note 1.)

2. Browne's pleading is fatally defective, in not stating that this lien contained the name of the owner, or reputed owner of the premises. He attempted, in his cross-complaint, wherein he seeks to foreclose such lien, to declare on

this lien, without attaching it to the cross-complaint, or setting it out in *hæc verba.* He must, therefore, have stated the necessary facts which such lien must contain to be valid. But he omits to state that the claim or lien upon which he was attempting to declare, contained or stated the name of the owner, or reputed owner of the premises. (*F. F. Ins. Co.,* 34 Cal. 60; *Green* v. *Covillaud,* 10 Cal. 332; 20 Barb. 468; 7 Wheat. 522.)

*Zuck & Hoover,* for Respondents.

The objection to plaintiff's lien made by appellants, that the claim is for a sum in gross, and does not specify the amount claimed for work and the amount claimed for materials, has, unfortunately for them, been already passed upon and decided adversely to them by this Court. (*Heston* v. *Martin,* 11 Cal. 41; *Brennan* v. *Swasey,* 16 Cal. 141; *Selden* v. *Meeks,* 17 Cal. 128; *Davis* v. *Livingston,* 29 Cal. 283.) And it needs no argument on our part to sustain the justice and reason of those decisions. Plaintiffs' claim is not for one sum for work and another for materials, but for one amount for the whole job.

The next objection to plaintiffs' lien, that it is not signed, is equally unfortunate. By a parity of reasoning, appellants might claim that a simple statement of account would be invalid because the person rendering it failed to sign the balance sheet. The law nowhere requires the claimant to sign the statement of his demand. Section five of the Act prescribes minutely everything the statement shall contain, and it nowhere requires it to be signed, but in any event the verification is a part of the instrument and is signed by plaintiffs and that is all the signature the law requires. The only good a signature would do would be to attest the genuineness of the instrument; the law requires a higher test—the oath of the parties to its correctness.

It is also contended by appellants that Browne's pleading

is fatally defective in not averring that the lien contained the name of the owner or reputed owner of the premises.

The statute requires the name of the " owner or reputed owner to be stated if known " (Sec. 5). Of course, if the name of the owner was not known it would be impossible to state it in the lien, and it would be absurd to aver that it was so stated. Hence, such an averment is not necessary to state a complete cause of action in declaring on a lien; but if it was an omission, it was merely one of form and not a substantial one, the allegations of the pleading being sufficient to sustain a judgment; and appellants have waived any advantage they might have taken of it by failing to demur.

We are at a loss to see, and appellants have not informed us in their brief, what clause of the Constitution has been violated in letter or in spirit by the provisions of the law they complain of. We certainly insist that it is entirely within the scope of the power of the Legislature to say what shall constitute an agency, and what acts may constitute one man an agent for another.

We deny that the third section of the Act amounts to confiscation of property. In the case cited by appellants, " A." has a complete means afforded by which to avoid the dire disaster with which they would have him overwhelmed. The law provides that by serving a notice on the building that he will not be responsible for the improvement, he can relieve himself and his interest therein from any liability on account of lien.

In reply to their objection to the fourth section, we would suggest that the Legislature is the proper judge of the length of time within which a notice should be given to enable a person interested in the premises to divest his interest therein from responsibility.

By the Court, WALLACE, C. J.:

First—Upon a careful consideration of the Act of March 30th, 1868, securing a lien to mechanics and others, in connection with the facts of this case, we are of the opinion that the objections made in argument, as to the constitutionality of the Act, cannot be maintained.

Second—The objection that the claim of Browne is not signed by him cannot be supported. His signature to the verification attached thereto is a sufficient signing of the claim within the intent of the Act.

Third—But we think that the amended answer and cross complaint of Browne is radically defective and insufficient to support the judgment he obtained. The statute (section five) requires that the claim for the benefit of the lien shall state, among other matters, the name of the owner or reputed owner of the premises, if known. The statement of the name of the owner or reputed owner is material—not less so than the statement of the amount of the demand after the deduction of just credits and offsets—the statute requires both and makes them equally indispensable. The pleading of Browne wholly omits to aver that his claim as filed contains the required statement upon the point of ownership. The averment, even had there been such, that the premises are those purchased by Murray of Mrs. Lewis, and are the same premises occupied by him, is not in substance an allegation upon the point of ownership or reputed ownership. But there is no such averment in the answer and cross complaint of Browne. The only allegation found there in this respect is an allegation that in his claim as filed he described the premises as those so purchased and occupied by Murray. Upon general demurrer this must have been held insufficient as a substantial allegation of ownership, or reputed ownership, of the premises at the time of the commencement of

CAL. REPS. XLIII—66

the action. It is true that we can see that the statement itself is not defective in the particular of ownership—but this will not aid the pleading upon the point. By the tenth section of the Act the pleadings in such cases as this are required to be the same as in other cases. It has so often been determined that unless the facts essential to the support of the case be alleged upon the record, evidence upon such omitted facts cannot be heard or considered, that a citation of authority upon the point is unnecessary. Evidence of facts, or stipulations as to the facts of a case, cannot make the case broader than it appears by allegation, nor can a party by mere force of facts admitted or proven become entitled to relief to which he would not have been entitled had his case been resisted only by general demurrer interposed to the pleadings upon which he relies.

The judgment is reversed and the cause remanded for further proceedings.

CROCKETT, J., dissenting, in part:

The claims or statements filed in the Recorder's office by the material men and laborers, for the purpose of securing their liens, were substantially in compliance with the statute. When materials are furnished and labor performed under one contract for a gross sum, it is not only unnecessary but would be impossible to specify in the statement or notice of lien how much of the sum due accrued for materials furnished, and how much for labor performed. The contract being that the whole were to be paid for by a gross sum it is unnecessary to apportion the amount between the two. (*Heston* v. *Martin,* 11 Cal. 41; *Brennan* v. *Swasey,* 16 Cal. 141; *Selden* v. *Meeks,* 17 Cal. 128; *Davis* v. *Livingston,* 29 Cal. 283.) Nor is it necessary that the statement should be signed by the claimant, provided it appears in the body of the statement who the claimant is and by whom the materials were fur-

nished or the labor performed; and provided, also, the statement is verified by the claimant. These would sufficiently identify the claimant and authenticate the statement without the actual signature of the claimant to the body of the statement. No useful purpose could be subserved by his signature to the body of a statement which he verifies with his oath. Nor is it essential that it should appear on the face of the statement in express terms that the materials furnished were actually used in the construction of the building. The language of the first section of the statute is that any person "furnishing materials of any kind to be used in the construction, alteration," etc., "of any building," etc., shall have a lien thereon; and the fifth section prescribes the method by which the lien is to be secured. It requires the person claiming the lien "to file with the County Recorder of the county in which such building or other improvement, or some part thereof, shall be situated, a claim containing a true statement of his demand, after deducting all just credits and offsets, with the name of the owner or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with said lien sufficient for identification, which claim shall be verified by the oath of himself or of some other person. (Stats. 1867–8, p. 589.) In *Davis* v. *Livingston,* 29 Cal. 283, a similar question arose under the Act of 1862, and it was held that the notice from the material man to the owner need not specify that the materials furnished were actually used in the building. The statute we are considering does not require that the statement shall aver in terms that the materials furnished were actually used in the building. But if it did, I think it sufficiently appears from the verified statement of the defendant Browne that the lumber furnished by him was in fact used in the building. It appears on the face of the statement that he commenced to furnish the lumber in November,

1869, and that the greater portion thereof was furnished before the 10th day of March, 1870, on which day the owner of the building entered into a written contract to pay Browne for all the lumber furnished by him for the building within six months from the 10th day of February, 1870. I think the inference is irresistible that the lumber furnished by Browne was actually used in the building. It is claimed, however, on behalf of the appellants, that the averments in Browne's cross-complaint are so defective, in substance, as not to support the judgment in his favor. The alleged defect consists in the omission to aver in the pleadings that his statement filed in the Recorder's office set forth the name of the owner of the building or land. The agreed statement of facts on which the action was tried, shows that the verified statement was not defective in this particular; and, if the pleading was not as full and explicit as it might, and perhaps should have been, in setting forth the contents of the verified statement in this respect, it is too late, after judgment, to raise this point for the first time in this Court.

The averments of the cross-complaint in respect to the contents of the verified statement filed by Browne are, that it contained "a true statement of his demand against said defendant Murray, after deducting all credits and offsets, with a correct description of the premises to be charged, which said description is as follows, to wit: the two-story frame or wooden dwelling house or building, divided into eleven rooms, with eighteen doors and eighteen windows, erected upon the lots or lands heretofore named, and here more particularly described as the land purchased by said R. J. Murray of Mrs. A. Lewis, and situated at the junction of Lewis and Railroad streets, in said Town of Gilroy, and on the east side of said Railroad street, and running sixty-four feet along the same, one hundred and forty feet along the south side of said Lewis street; said building and premises being the same now occupied by the said Murray and

his family." The cross-complaint, it is true, contains no direct averment that the verified statement set forth the name of Murray as the owner, or reputed owner, or that the owner was unknown; nevertheless, it sets forth the description of the premises as contained in the verified statement in which the lot is described "as the land purchased by said R. J. Murray of Mrs. A. Lewis," and it further shows that "the said building and premises" are "the same now occupied by the said Murray and his family."

The statute prescribes no formula for the verified statement; but simply directs that it shall contain "a true statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with said lien sufficient for identification."

The verified statement, as described in the cross-complaint, sets forth that the lot is the same purchased by him of Mrs. Lewis, and the natural inference is that Murray continued to be the owner; and more particularly when this is coupled with the further fact that Murray caused the building to be erected, and on its completion occupied it with his family, all of which facts appeared from the verified statement as described in the cross-complaint.

If the pleading was defective in the particular referred to, it was defective in form only and not in substance. Such defects can be reached by special demurrer only, and the objection to such a pleading cannot be raised for the first time in this Court. I am, therefore, of opinion that the cross-complaint is sufficient to support the judgment.

We are also urged to hold the Act of March 30th, 1868, securing a lien to mechanics and others, to be unconstitutional in several of its provisions; but after a careful consideration of the argument of counsel, I see no reason to doubt

the constitutionality of the statute in the particulars which are specified; and even though I entertained a grave doubt on the subject, this would not justify me in holding the Act to be void. Statutes are set aside by the Court as unconstitutional only in clear cases, where there is no room for reasonable doubt.

I am of the opinion that the judgment should be affirmed.