[Civ. No. 22607. Second Dist., Div. One. Apr. 7, 1958.]

WILLIAM P. LAWSON et al., Respondents, v. TOWN AND COUNTRY SHOPS, INC. (a Corporation), Appellant.

Gordon M. Emanuel, Bernard S. Selber and Abe Mutchnik for Appellant.

Patricia Lane and Patrick J. O'Reilly for Respondents.

FOURT, J.—This is an appeal from a judgment in an action for damages for fraud and deceit by Town and Country Shops, Inc., in favor of William P. Lawson and Mary Alice Lawson against all three of the original defendants: Jere Strizek, president of appellant corporation, Lew Levy, rental agent for appellant, and appellant.

There was a cross-complaint for rent due on a lease and for money due on promissory notes.

Damages assessed on the cross-complaint in the amount of $6,141.24 were deducted from the sum of $20,316.24 assessed as general damages on the complaint; and judgment was ordered in the net amount of $14,175 as general damages, plus $5,000 as punitive damages.

Subsequently a new trial was granted as to Jere Strizek; and the appeal as to Lew Levy was dismissed pursuant to rule 17a of Rules on Appeal.

The fraud and deceit action is based upon certain representations made by Lew Levy to induce Mr. and Mrs. Lawson to lease certain premises in the ''Town & Country Shopping Center'' in Los Angeles from appellant, said representations relating principally to the number of other stores and business establishments, the dates of occupancy of the other store buildings, and the names of purported tenants who had already supposedly leased space. Two separate leases were executed on June 9, 1953, each of which was for a five-year term commencing August 1, 1953, and ending July 31. 1958.

The prayer of the original complaint included the following items of damage: $7,500 for permanent improvements, $11,000 for operating losses, $7,300 for loss of profits, $10,000 for exemplary damages, and $169.28 for electricity wrongfully appropriated.

Outside the presence of the prospective jurors, the item of damages consisting of profits on investment was waived; and a supplemental cross-complaint was permitted to be filed, adding as an item of damage the amount of $3,000 as the reasonable value of fixtures, to rental due in the amount of $5,900.92 and $1.000 due on certain promissory notes.

At the close of the trial a motion was heard in chambers outside the presence of the jury, as the result of which the complaint was amended to increase the item of $11,000 damages for operating losses to $23,500 to include damages for loss of personal services and the unpaid balance of rent under the leases. The motion to amend was then granted in

the presence and hearing of the jury prior to the closing arguments, the trial judge stating as follows:

"Ladies and gentlemen of the jury, as the Court has advised you a number of times in this case, all matters of law are for the Court to determine, and that is really what we have been discussing. Matters of fact are for you.

"The Plaintiff has made a motion to amend, which the Court will permit, and will permit the Plaintiff to amend the complaint in certain respects. In permitting the amendment to the complaint, the Court only rules upon the law and does not, by ruling upon the law, express or intend to express, any opinion as to what facts have or have not been established, or the evidence; or does not make, nor intend to make, any expression of an opinion as to what the Court feels is—has been proven or has not been proven. It is still a question of law and not a question of fact. The question of fact is up to the jury, and I express no opinion now, and have endeavored not to during the trial, and will not before the trial is over, express any opinion which I may have regarding the establishment or the failure to establish any fact whatsoever in the trial of the case.

"Now with that in mind, the Court has permitted, as a matter of law, the Plaintiffs to amend the complaint, Paragraph 12 specifically thereof, as follows:

" 'The Plaintiffs allege and all of the Defendants deny and also affirmatively allege that the effect that any of it may or may not have had, has been waived by the waiver of the Plaintiffs—is alleged and denied and so forth—that by reason of the fraudulent representations of the Defendants and each of them as is set out——'

"and I am not going to read the whole complaint to you——

" 'that as a direct and proximate result of the fraud and deception practiced on the Plaintiffs by the Defendants and each of them, that the Plaintiffs expended time and effort in developing said property and the operation of the business therein for a period of approximately seventeen months, during which period Plaintiffs suffered an operating loss,' and they have alleged $11,500.00 and the complaint is now amended to read '$23,500.00, including the reasonable value of Plaintiffs' services for seventeen months and the Plaintiffs ask for judgment in the amount of $23,500.00.'

"Now again, please, by granting that amendment, I express no opinion on what has or has not been established, or in connection with it, whatsoever.

"Now, Mr. Binkley, you may open the argument."

Appellants contend that as a matter of law, respondents have failed to prove all of the requisite elements of a cause of action in fraud and deceit; that as a matter of law there was a waiver of, and estoppel to rely upon, said fraud by the act of remaining on the premises for about 15 months after discovery of the fraud and by requesting and receiving certain modifications of their obligations; that prejudicial error resulted in permitting amendment to the complaint, in the giving of certain instructions, and from certain comments of counsel; and that the measure of damages was incorrectly applied.

In the recent case of *Zinn* v. *Ex-Cell-O Corp.*, 148 Cal. App.2d 56, it is stated (at p. 68 [306 P.2d 1017]), "The general elements of a cause of action for fraudulent misrepresentation are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." Appellant appears not to question that certain false representations were made, and directs his argument to the sufficiency of the evidence to establish the materiality of the representations made and reliance upon them. "Since the question raised is the sufficiency of the evidence to support the verdict *the appellants must practically demonstrate that there is no competent evidence to support the verdict.* Their mere recital of evidence favorable to them is not sufficient. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].)" (Emphasis added.) (*Zainudin* v. *Meizel*, 119 Cal.App.2d 265, 270-271 [259 P.2d 460].)

We cannot say as a matter of law that the evidence was insufficient. The testimony of an interested party is competent and admissible, and, if believed by the trial court, is sufficient to determine the issue. (See *Zinn* v. *Ex-Cell-O Corp., supra,* 148 Cal.App.2d 56, 69.)

Considerable confusion formerly existed in the California law as to whether a defrauded party was required to make an election of remedies; when and how the election had to be made, if an election were required; and what acts or conduct constituted a waiver of existing rights.

Certainly if the rule enunciated in *Schmidt* v. *Mesmer*, 116 Cal. 267 [48 P. 54], which was followed in *Schied* v. *Bodinson Mfg. Co.*, 79 Cal.App.2d 134 [179 P.2d 380], were determined to constitute a correct statement of the current California law as appellant contends, the trial court as a matter of law

could have decided that there had been a waiver of the fraud. A careful review of some of the more recent cases, however, indicates that there can be no waiver in the absence of an intentional relinquishment of a known right, and that requests for modifications of contractual provisions and even the acceptance thereof merely are factors to be considered in determining whether the requisite intent was express, or whether it can be implied or inferred from the surrounding circumstances.

In *French* v. *Freeman,* 191 Cal. 579, it was stated (at p. 590 [217 P. 515]), "The question of waiver or nonwaiver was one of fact for the trial court to pass upon, and the acts or conduct which defendant claims constituted said waiver were the evidence to be considered in determining the ultimate fact of waiver or nonwaiver. . . . We cannot say, as a matter of law, that plaintiff intended to and did waive the fraud herein complained of."

The problem was considered in *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, and the comment was made (at p. 751 [192 P.2d 935]), "There appears to be no decision in California or elsewhere which squarely holds on its face that the mere making of an unfulfilled request alone constitutes a waiver as a matter of law." The Supreme Court, speaking through Mr. Chief Justice Gibson, expressly disapproved of the language in *Schmidt* v. *Mesmer, supra,* to the extent that it indicated that the mere making of a request in itself would constitute a waiver; and then added, "There is serious doubt whether even a granted request of a favor, such as an extension of time, should be held to constitute a waiver in the absence of estoppel or the making of a new agreement supported by consideration, . . . ."

In *Friedberg* v. *Weissbuch,* 135 Cal.App.2d 750 [287 P.2d 785], the specific problem referred to in *Bagdasarian* v. *Gragnon, supra,* was considered, and the court stated (on pp. 755 and 756), "Appellants argue that the defendants, by entering into subsequent agreements with the plaintiffs, waived fraud. We are not in accord with this contention. The subsequent agreement referred to was merely a reduction in the monthly payments required by the contract and its other provisions were not thereby affected. . . . The question of whether the delay of defendants in the instant case was such as to render it inequitable to grant relief from fraud was a question for the trial court and is left to its sound discretion."

There had been a delay of 15 months before a notice of rescission was served in *Williams* v. *Marshall,* 37 Cal.2d 445 [235 P.2d 372]. The Supreme Court reviewed the evidence, including the attempts through negotiations to avoid litigation and the fact that there were no replies to several letters, and then stated (at p. 456), " 'Where a party protests promptly on discovering that he has been defrauded in making a contract, and enters into negotiations for a peaceful settlement, which fail, a complaint filed within a reasonable time after such failure is not barred by laches.' (*Reiniger* v. *Hassell,* 216 Cal. 209, 210-211 [13 P.2d 737].) "

 The circumstances under which the motion to amend was allowed have been set forth hereinabove in detail. The ruling made in *Sanguinetti* v. *Moore Dry Dock Co.,* 36 Cal.2d 812 [228 P.2d 557], upon which appellant relies, has been carefully considered, and we are of the opinion that it is not controlling in the instant case where comparative negligence was not in issue, and where the motion to amend was made in chambers and not in the presence of the jury.

Appellant admits that in each instance where objection was made to improper conduct of counsel, the jury was admonished to disregard any comments which had been made. This claim of error was reviewed by the trial court in ruling on the motion for a new trial, which was denied. In reading the voluminous transcript in this case there are many indications that it was bitterly contested, and counsel on each side failed on occasion to observe the highest standards of professional conduct. Under the circumstances, we find no misconduct of counsel of such magnitude as to constitute prejudicial error. However, it may be noted that counsel presently appearing on this appeal are not the same counsel who represented the parties in the trial court.

 Appellant claims that the damages awarded were excessive for a number of reasons, and the instructions to which exception is taken relate to the measure of damages to be applied. Appellant cites a number of cases as illustrative of the so-called "Minnesota rule" to the effect that the lease contract should be regarded as severable in respect to time, and that damages should be awarded only up to the time of the discovery of the fraud. Appellant urges that the same result would be achieved by a proper application of the mitigation of damage rule.

In the alternative, appellant argues that by an application of the theory of legal relations expounded by the late Pro-

fessor Wesley N. Hohfeld, respondents must be deemed to have affirmed the leases, in which event the jury should have been instructed that all rent paid and owing and the value of the improvements removed in derogation of the leases should be deducted as items of damage for operating losses.

As another alternative, appellant contends that the ''difference in value'' rule set forth in Civil Code, section 3343, as the measure of damages in an action for fraud and deceit inducing the purchase, sale or exchange of property has now been extended in *Collins* v. *Kobold*, 146 Cal.App.2d 868 [304 P.2d 182], to actions for fraudulent inducement to execute a lease.

Appellant then asserts that in the application of the measure of damages deemed to be proper, it becomes apparent that the damages actually awarded were so excessive as to indicate clear passion and prejudice; and that, as a matter of law, appellant cannot be liable for punitive damages.

Civil Code, section 3343, upon which appellant relies, provides as follows: ''One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, *together with any additional damage arising from the particular transaction.*

*''Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled.''* (Emphasis added.)

Civil Code, section 1709, provides: ''One who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable *for any damage* which he thereby suffers.'' (Emphasis added.)

Extensive references have been made to the case of *Bagdasarian* v. *Gragnon, supra,* and the problem of measure of damages in a fraud case is discussed therein (at pp. 762-763) as follows:

''In view of the broad, general language of section 3343 of the Civil Code and the uncertainty in the law that existed both here and elsewhere prior to the adoption of that section, it is reasonable to conclude that the statute was enacted to provide a uniform rule for all fraud cases, and we can see no reason for refusing to follow the decisions which have applied it as the exclusive measure of damages. Moreover, to hold that an additional or alternative measure may be ap-

plied in some cases would create further confusion with respect to when the alternative measure would be appropriate in place of the statutory measure and whether the matter would be one for the judge, as a matter of law, or for the jury.

"The provisions of section 3343 to the effect that the defrauded person may also recover any 'additional damage' arising from the particular transaction and that nothing in the statute shall be deemed to deny to such a person 'any legal or equitable remedies' to which he may be entitled, do not indicate that any other *measure of damages* may be applied. The right to recover *additional* damages does not refer to the *measure* of damages, but, rather, to such matters as expenses or other consequential injury resulting from the fraud. (Citing authorities.) . . . The construction which has been placed on section 3343 does not preclude the allowance of exemplary damages. (Citing authorities.)"

■ It is apparent that punitive damages could properly be allowed in this type of case; and "The reviewing court's power to declare an award of damages excessive exists only when from the facts the amount appears at first blush to suggest passion or prejudice on the part of the jury. There is no distinction when the review is of an award of exemplary rather than actual damages. (Citing authorities.) · ■ These and other cases indicate that it is the province of the jury, and the trial court on the motion for a new trial, to say whether punitive damages should be awarded. The presumptions are in favor of the correctness of the verdict and judgment. ■ After an award has been approved by the trial court the reviewing court will hesitate to declare the amount excessive unless upon consideration of the entire record including the evidence it must be said that the award was the result of passion or prejudice. (Citing cases.)" (*Finney* v. *Lockhart*, 35 Cal.2d 161, 164 [217 P.2d 19].)

■ The false representations of Lew Levy, rental agent for appellant, were sufficient to subject appellant to liability (*Kruse* v. *Miller*, 143 Cal.App.2d 656, 660 [300 P.2d 855]; Rest., Agency, § 401, p. 914); and the loss which resulted could be held to include punitive damages. We do not regard such a holding to be inconsistent with the action of the trial court in granting a new trial as to Jere Strizek in his individual capacity. Apparently the trial court in exercising its discretion did not regard the showing as to participation in or ratification by or adoption of the acts of Lew Levy by Jere Strizek in his individual capacity to have been sufficiently

clear to approve the award of punitive damage as to him, and did regard the showing to have been sufficient to approve the award of punitive damages as to appellant.

No case has been cited by counsel allowing rent due or to become due as an item of damage. In view of the award of damages on the cross-complaint for this item, however, we are of the opinion that it would be unreasonable not to allow these expenditures to be included in the determination of the amount of consequential damage suffered by reason of the fraud.

■ Loss of time and effort or loss of salary have been held to be items of damage proximately caused by making fraudulent misrepresentations as inducement to execute a lease, and have been held to be recoverable. (*Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525, 534 [170 P.2d 898, 167 A.L.R. 271]; *Rowland* v. *Columbia Mining etc. Co.*, 2 Cal.App.2d 410, 421 [38 P.2d 418].)

We do not regard the award to be the result of passion or prejudice.

The judgment is affirmed.

White, P. J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied April 30, 1958.

---

*Assigned by Chairman of Judicial Council.